IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JEFFREY L. BOWMAN,            )
                             )
            Petitioner,       )         No. C 06-3901 CRB
                             )
    vs.                       )         **MEMORANDUM AND**
                             )         **ORDER DENYING**
JAMES A. YATES, Warden,       )         **PETITION FOR A WRIT OF**
                             )         **HABEAS CORPUS**
            Respondent.       )
_____ )

Petitioner, a state prisoner incarcerated at Pleasant Valley State Prison, seeks a writ of habeas corpus under 28 U.S.C. § 2254 on the ground that he was denied his federal constitutional rights due to: (1) improperly excluded evidence, (2) insufficient evidence to support the conviction, (3) a faulty jury instruction, and (4) a violation of his Confrontation Clause rights.

After reviewing the record and the legal arguments of the Petitioner and the government, the petition is DENIED.

### STATEMENT OF THE CASE

On August 22, 2000, a jury in the Superior Court of the State of California in and for the County of Humboldt found Petitioner and his co-defendants, Joseph David Hanley and Lucan Keisner, guilty of first degree murder (Cal. Pen. Code §§ 187, 189)[1], burglary (§§ 459, 460) and attempted first degree robbery

---

[1]Unless otherwise indicated, all future statutory references will be to the California Penal Code.

(§§ 211, 212.5, 664).  The State had also charged Petitioner with a sentence enhancement for personal use of a knife in committing attempted robbery (§§12022(b)(1)) and special circumstances for commission of the crime during the course of robbery and burglary (§§ 190.2, subdivision (a)(17)(A) and (a)(17)(G)).  The jury determined that for Petitioner, both the sentence enhancement and the special circumstances were not true.

On December 24, 2001, Petitioner was ordered to serve a term of 25 years to life in state prison.  He and his co-defendants separately filed appeals with the California Court of Appeal.  On January 28, 2004, the Court of Appeal for the First Appellate District affirmed all three co-defendants' sentences in a single opinion.  See People v. Keisner, 2004 WL 206614 (Cal. App. 1st Dist. Jan. 28, 2004) modified on denial of reh'g (Feb. 25, 2004).  The California Supreme Court denied review of the case on April 14, 2004.

Petitioner then filed a habeas corpus petition with the California Supreme Court, raising the additional issues of excluded expert testimony and violation of his Confrontation Clause rights.  After the court denied this petition without issuing an opinion, Petitioner filed this instant federal petition for habeas relief under 28 U.S.C. § 2254.  Per an order filed on September 28, 2007, the district court found that the petition, when liberally construed, stated a cognizable claim under § 2254 and ordered Respondent to show cause why a writ of habeas corpus should not be granted.  After receiving a copy of the order on November 15, 2007, Respondent filed an answer on December 7, 2007.  Petitioner filed a traverse on January 2, 2008.

//

//

//

1

2
**FACTUAL BACKGROUND[2]**

3
On the night of December 2, 1999, four men, three wearing ski-masks and

4
the fourth in a hood, entered the home of Julius Aubrey in Trinidad, California,

5
and demanded money and drugs. The men were alleged to be Petitioner, Keisner,

6
Hanley, and Nickie Metcalf. The four men had driven to Aubrey's home in

7
Petitioner's car and were accompanied by Bonnie Steele, who was Aubrey's

8
niece. Though she apparently did not enter his home, Steele knew that Aubrey

9
had recently received a significant sum of money and would be a good target for

10
a robbery as he was a drug user. Hanley also potentially knew that Aubrey had

11
recently come into some money as he periodically worked for Aubrey. Either

12
individual could have suggested Aubrey as a good target for the robbery.

13
Prior to embarking for Aubrey's house, Petitioner had consumed a

14
significant quantity of psilocybin "magic" mushrooms and some alcohol. He had

15
initially driven the group in his car, but another driver took over after Petitioner

16
proved incapable of operating the vehicle safely.

17
Upon arriving at the house, the group first knocked on the front door.

18
When there was no answer, they entered through the back door, unannounced.

19
Once inside Aubrey's home, one of the three masked men wielded a knife and

20
took the lead in demanding money from Aubrey. After searching for something

21
to give the intruders, Aubrey returned empty-handed and told the men that they

22
would not get away with the crime. The leader of the group responded that it did

23

24
[2]Unless otherwise noted, the Factual Background is drawn from the

25
California Court of Appeal Opinion, see Keisner, 2004 WL 206614, at *1-*2 and
statements in the Petition for Writ of Habeas Corpus ("Petition"). See 28 U.S.C.

26
§ 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be

27
presumed to be correct.").

28
3

not matter because he was already facing a prison term.  As the men moved to leave, the last one of them suddenly lunged at Aubrey and stabbed him in the chest with a knife.  Aubrey subsequently died from the stabbing.

Upon fleeing the house, the men got into Petitioner's car, where Steele was waiting.  The Court of Appeal described the scene:

> The situation was chaotic.  Keisner asked Bowman repeatedly "why he did it."  Bowman was "freaking out."  He replied, "Do what?" and somewhat inconsistently that he "[did not] know."  Keisner got into the driver's seat and sped off.  He drove so recklessly that Steele thought they might drive off a cliff.

Keisner, 2004 WL 206614, at *1 (alteration in original).

A little more than a mile from Aubrey's home, Keisner drove off the road. All five passengers got out of the car and flagged down a nearby truck.  The truck's occupants drove the group to Arcata where they got another ride from Nickie Metcalf's wife.  After dropping Keisner, Hanley and Steele off, she drove Petitioner and Metcalf home.  Once there, she helped Petitioner wash a substance that appeared to be blood off his coat.  As they sat around talking, Metcalf told Petitioner, "I can't believe you did that[.]"  Id. at *2 (alteration in original). Petitioner responded that he did not know.  He was also periodically speaking incoherently in "Muppet talk."

Petitioner later spoke with his girlfriend, Katie Hynes[3], and confessed that he had been involved in the murder.  He told her that he was so high on mushrooms that night that he did not know what happened, had not known what was happening, was so "loaded" he could not talk, and that the whole event seemed like a dream.  He also admitted that he had driven to the victim's house

---

[3]Petitioner refers to her as "Katherine Hayes."  See Petition at 6; Petitioner's Memorandum of Points and Authorities in Support of Reply ("Traverse") at 4 .

and that a man had been stabbed there.  Petitioner later told Hynes that he had "killed that guy in Trinidad."  Once in custody, Petitioner admitted to his cell-mate that he had "stabbed [Aubrey] in the heart."

Police found Petitioner's car where it had been abandoned and discovered Aubrey's blood inside.  Police also found a knife outside the car with blood on it that matched the victim's blood-type.  Officers played a tape of Petitioner's voice and a friend of Aubrey's, who had been in his home on the night of the murder, identified it as being the voice of the man with the knife.

At the joint trial both Petitioner and Hanley admitted to being present at the attempted robbery, but Keisner denied he was involved in the crime at all.  Hanley claimed he was the individual who wore the hood, not a mask and was not as directly involved in the theft or stabbing.  Petitioner's lawyer put forth the theory that he was so incapacitated from ingesting drugs that he lacked the capacity to form the intent necessary to commit the crimes.  The parties additionally stipulated that Petitioner was the only individual who was out on bail at the time of the break-in and murder.

Because it was a joint trial – the judge had denied several motions for severance – the court had to rule several times on the admissibility of evidence that served conflicting purposes for the three co-defendants.  These rulings included, among other things, the partial exclusion of statements made by co-defendant Hanley, by Petitioner's ex-girlfriend Hynes, by Petitioner's former cell-mate, and a limitation on the testimony of Petitioner's expert witness, Dr. Smith.  The court did admit a redacted transcript of co-defendant Hanley's confession to police, but did not allow any cross-examination of the testimony.  It is on the basis of these excluded and admitted pieces of evidence that the Petitioner bases his petition.

5

**DISCUSSION**

A.    Standard of Review

      This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

      The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  In general, a federal habeas court is "highly deferential" to the ruling of the state court and grants them "the benefit of the doubt."  Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curiam) (citation omitted).

      "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  Williams v. Taylor, 529 U.S. 362, 412-13 (2000).  "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id.

      "[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision

6

applied clearly established law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Id. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003).  While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. Id.

If a federal court determines that a constitutional error has occurred, the court must also find that said error "had substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)). Essentially, Petitioner must prove that any such error resulted in "actual prejudice." See id.

B.    Claims and Analysis

Petitioner makes four claims in challenging his conviction.  He first argues that the trial court improperly excluded evidence that supported his defense: statements by his co-defendant, proposed cross-examination of his former girlfriend, proposed cross-examination of a former cell-mate, and a limitation on the testimony of Petitioner's expert witness.   Second, he contends that the trial evidence is insufficient to support the jury's verdict.  He next argues that one of

7

the jury instructions the trial court gave, CALJIC No. 17.41.1, violated his right to a jury trial.  Petitioner's last claim is that his Confrontation Clause rights were violated when the court admitted statements made by his co-defendant into evidence, but did not permit Petitioner to cross-examine him.

1. *Excluded Evidence*[4]

Petitioner claims the trial court denied him "due process when it unduly restricted the presentation of defense evidence."  See Traverse at 1.  He contends that exclusion and limitation of certain pieces of evidence weakened his central defense that he was too high to have the specific intent to commit robbery and thus could not be liable for felony murder.  The excluded evidence is: (1) redaction of some of co-defendant Hanley's statements, referring to the fact that Petitioner was "trippin'" and driving all over the road on the night in question; (2) exclusion of cross-examination testimony of Katherine Hynes relating to Petitioner's statement that he was so high that someone else had to drive the car; (3) preclusion of cross-examination testimony from Petitioner's former cell mate, testifying that Petitioner was mimicking what people around him said; and (4) limitation of the expert testimony of Dr. Smith, a specialist in addiction medicine, to general expertise regarding substance abuse and its impact on the mind and not admitting his opinion on Petitioner's ability to form the specific intent needed to commit the crimes in question on the night of the murder.   As Petitioner did not challenge this last piece of evidence on direct appeal, and the issue was denied on the state habeas appeal without a formal opinion, the Court will address it separately form the other three pieces of evidence.

---

[4]Petitioner does not challenge the trial judge's denial of Petitioner's motion to sever the trial; rather, he contends that evidence was improperly excluded.  See Petition at 5-6; Traverse at 2.

1      The trial court excluded Petitioner's proffered evidence on the ground it

2  would violate his co-defendants' Sixth Amendment confrontation rights under

3  Bruton v. United States, 391 U.S. 123 (1968).  Keisner, 2004 WL 206614, at *8.

4  The appellate court affirmed the trial court's ruling and agreed that there was

5  sufficient evidence in the record to support Petitioner's main defense and that the

6  excluded evidence was cumulative:

7           . . . Bowman's counsel did not dispute that Bowman was present at
        Aubrey's house on the night of the murder.  Instead, he contended Bowman
8       was so intoxicated that he lacked the ability to form the specific intent
        necessary to commit the crimes.  The evidence that Bowman has identified,
9       that he had been taking mushrooms and was so intoxicated that he was
        simply "mimicking" what his codefendants were doing, would have
10      supported that defense.  However, it is clear the [sic] Bowman was not
        denied a fair trial because, as Bowman admits "much of the excluded
11      evidence was corroborative."

12          In another portion of her testimony, Katherine Hynes said Bowman
        told her he was so high on mushrooms on the night of the crime that he did
13      not know what was happening.  Hynes also said Bowman told her he was so
        "loaded" that he could not talk.
14
            Bonnie Steele said when she got in the car with appellants on the night
15      of the crime, it appeared they had all been taking mushrooms.

16          Kelley Metcalf testified that when she brought Bowman home after the
        crime, he appeared to be hallucinating.  According to Metcalf, Bowman sat
17      on the couch and spoke in "Muppet talk."

18          Because there is ample evidence in the record to support the
        conclusion that Bowman had taken psychedelic mushrooms on the night of
19      the crime and that he was intoxicated, the court's exclusion of cumulative
        evidence on the same point could not have prejudiced Bowman to a
20      significant extent.  We conclude it is not reasonably probably that Bowman
        would have achieved a more favorable result if his case had been severed.
21      (People v. Massie, [66 Cal.2d 899,  922-23 (1967)]).

22  Id. at *9.

23      "State and federal rulemakers have broad latitude under the Constitution to

24  establish rules excluding evidence from criminal trials."  Holmes v. South

25  Carolina, 547 U.S. 319, 324 (2006) (quotations and citations omitted); see also

26  Montana v. Egelhoff, 518 U.S. 37, 42 (1996) (holding that due process does not

27

28                                      9

guarantee a defendant the right to present <u>all</u> relevant evidence).  This latitude is limited, however, by a defendant's constitutional rights to due process and to present a complete defense, rights originating in the Sixth and Fourteenth Amendments.  <u>See</u> <u>Holmes</u>, 547 U.S. at 324.  Evidentiary rules do not violate a defendant's constitutional rights if they are not "arbitrary or disproportionate to the purposes they are designed to serve."  <u>United States v. Scheffer</u>, 523 U.S. 303, 308 (1998) (quotations and citation omitted).  The defendant bears the burden of demonstrating that the principle violated by the evidentiary rule "is so rooted in the traditions and conscience of our people as to be ranked as fundamental."  <u>Egelhoff</u>, 518 U.S. at 47 (internal quotations and citations omitted).

In deciding if the exclusion of evidence violates the due process right to a fair trial or the right to present a defense, the court balances the following five factors: (1) the probative value of the excluded evidence on the central issue; (2) its reliability; (3) whether it is capable of evaluation by the trier of fact; (4) whether it is the sole evidence on the issue or merely cumulative; and (5) whether it constitutes a major part of the attempted defense.  <u>See</u> <u>Chia v. Chambra</u>, 360 F.3d 997, 1004 (9th Cir. 2004).  The court must also give due weight to the state interests underlying the state evidentiary rules on which the exclusion was based.  <u>See</u> <u>Miller v. Stagner</u>, 757 F.2d 988, 995 (9th Cir. 1985).

The evidence at issue all added weight to Petitioner's main defense that he was too high to form the specific intent required to commit the crimes underlying his conviction for felony murder.  Nonetheless, as Petitioner highlights, "[t]here was abundant and uncontroverted evidence that [he] was highly intoxicated before and after the commission of the crime."  Petition at 9.  There was evidence at trial that Petitioner had taken mushrooms and was hallucinating during the

crime.  The trial record also includes evidence that he was too high to drive and had driven so unsafely that another member of the party took over the driving. He was also intoxicated to the point of speaking incoherently and describing the whole event as being "like a dream."  While Petitioner is correct that the excluded evidence would have supported his main defense, it was not unreasonable for the state court to conclude that this evidence was not critical to the defense and was merely cumulative and corroborated other evidence already on the record.

Petitioner's  reliance on Chambers v. Mississippi, 410 U.S. 284 (1973) is misplaced.  While the Chambers Court held that the state court had erred in excluding critical evidence for the defense, the Court also clarified that its holding should not "signal any diminution in the respect traditionally accorded to the States in the establishment and implementation of their own criminal trial rules and procedures."  410 U.S. at 302-03.  Here, the trial court appropriately weighted the countervailing concerns of Petitioner's co-defendants and reasonably determined that the evidence in question was not critical to the defense, and instead was cumulative.  Because the state court made no constitutional error, Petitioner's reliance on other cases wherein the error was not harmless is misplaced.  See Traverse at 3.

As to the limitation of Dr. Smith's expert testimony, Petitioner argues that like the above referenced pieces of evidence, excluding Dr. Smith's testimony regarding Petitioner's state of mind on the night of the offence deprived him of his ability to present a complete defense and thus violated his due process rights. See Petition at 7.  The trial court permitted Dr. Smith to testify as to the general effects of psilocybin mushrooms on a person's mental and physical acuity.  What the trial court excluded was the expert's opinion on Petitioner's ability to form

intent on the night of the crime.

Respondent contends that the trial court appropriately limited Dr. Smith's testimony because it was either "incompetent hearsay evidence" or because it violated California Penal Code section 29, which prohibits expert testimony on whether a defendant had a required mental state. See Memorandum of Points and Authorities in Support of Answer to Petition ("Answer") at 9-10; Cal. Pen. Code § 29 ("In the guilt phase of a criminal action, any expert testifying about a defendant's . . . mental defect shall not testify as to whether the defendant had or did not have the required mental states, which include, but are not limited to . . . intent . . . for the crimes charged.  The question as to whether the defendant had or did not have the required mental states shall be decided by the trier of fact.").

Petitioner does not cite Supreme Court case law in support of his position that the exclusion was contrary to or an unreasonable application of federal law. As noted above, there was ample evidence at trial that Petitioner was under the influence of drugs and was significantly impaired both before and after the crime. The trial court permitted Petitioner's expert to testify on the general effects of the drugs on Petitioner and this, coupled with the evidence regarding Petitioner's inability to drive and difficulty communicating, gave the jury ample grounds for making a ruling.  In weighting the probative value of the proposed testimony against the countervailing state interest in its own evidentiary rules, the state court reasonably determined that Dr. Smiths's opinion on Petitioner's ability to form intent should be limited.

Given the weight of evidence in the record and considered by the jury, the state court's exclusion of all four pieces of evidence was not an unreasonable application of Federal law.

2. *Insufficient Evidence*

12

1    Petitioner's second claim is that the evidence at trial was insufficient to
2    support his conviction on a charge of felony murder.  Because "[t]here was
3    abundant and uncontroverted evidence that petitioner was highly intoxicated
4    before and after the commission of the crime[,]" Petitioner reasons he was
5    incapable of forming the specific intent to commit robbery and thus the jury's
6    verdict finding him guilty of felony murder based on the attempted robbery
7    charge is unsupported.  Petition at 9.
8        "[T]he Due Process Clause protects the accused against conviction except
9    upon proof beyond a reasonable doubt of every fact necessary to constitute the
10   crime with which he is charged."  In re Winship, 397 U.S. 358, 364 (1970).  A
11   state prisoner who alleges that the evidence in support of his state conviction was
12   not sufficient to have led a rational trier of fact to find guilt beyond a reasonable
13   doubt therefore states a constitutional claim, which, if proven, entitles him to
14   federal habeas relief.  See Jackson v. Virginia, 443 U.S. 307, 321, 324 (1979).  A
15   federal court reviewing a state court conviction does not determine whether it is
16   satisfied that the evidence established guilt beyond a reasonable doubt.  Payne v.
17   Borg, 982 F.2d 335, 338 (9th Cir. 1992).  The federal court "determines only
18   whether, 'after viewing the evidence in the light most favorable to the
19   prosecution, any rational trier of fact could have found the essential elements of
20   the crime beyond a reasonable doubt.'"  See id. (quoting Jackson, 443 U.S. at
21   319) (emphasis added).  Only if no rational trier of fact could have found proof of
22   guilt beyond a reasonable doubt, may the writ be granted.  See Jackson, 443 U.S.
23   at 324 (emphasis added).  If confronted by a record that supports conflicting
24   inferences, a federal habeas court "must presume – even if it does not
25   affirmatively appear on the record – that the trier of fact resolved any such
26   conflicts in favor of the prosecution, and must defer to that resolution."  Jackson,
27
28                                    13

443 U.S. at 326.

The state court determined that there was sufficient evidence for the jury to find that Petitioner had an intent to rob.  See Keisner, 2004 WL 206614, at *10. In reviewing the specific evidence admitted at trial, the court stated:

> According to [an eye-witness] four men entered Aubrey's home on the night of the crime.  Three wore masks.  One did not.  Since Hanley said he did not wear a mask that evening, the jurors could reasonably conclude [Petitioner] did wear a mask.
>
> In addition, [the witness] testified that one of the intruders, who appeared to be in charge of the others, asked for money and drugs.  When Aubrey said he did not have any and that the robbers would be caught, the lead intruder said it did not matter because he was facing an extended prison term.  The parties *stipulated* at trial that [Petitioner] was out on bail on the night of the crime awaiting charges that could result in a 12-year prison term.  Based on this evidence, the jurors could reasonably conclude that [Petitioner] was the lead intruder.
>
> Thus, viewing the record in the light most favorable to the judgment, the evidence supports the conclusion that [Petitioner] wore a mask when he entered Aubrey's home, that he was in charge of the other robbers, and that he demanded money and drugs from Aubrey.

Id. at *9-10.

The state court's determination that the evidence was sufficient was not objectively unreasonable.  See Juan H. v. Allen, 408 F.3d 1262, 1275 nn.12, 13 (9th Cir. 2005).  While Petitioner was intoxicated, the jury had before it ample evidence in support of both his state of mind and his presence at the crime.  Their determination of his guilt is thus supported by facts in the record.

### 3.  *Jury Instruction CALJIC No. 17.41.1 Violated Petitioner's Right to Jury Trial*

The trial judge gave CALJIC No. 17.41.1, which instructs the jury to notify the court if a juror is perceived as failing to deliberate.  Petitioner cites People v. Engleman, 28 Cal. 4th 436 (2002), to support his argument that the instruction violated his Sixth Amendment right to a jury trial.  In Engleman, however, the California Supreme Court noted that, while "the instruction should not be given

14

in criminal trials in California[,]" it "does not infringe upon defendant's federal or state constitutional right to trial by jury . . . ." Id. at 439-40.  Moreover, the Ninth Circuit has held that a state court decision denying a challenge to CALJIC No. 17.41.1 is not contrary to any existing Supreme Court precedent and thus is not a basis for habeas relief.  See Brewer v. Hall, 378 F.3d 952, 955-56 (9th Cir. 2004). Petitioner's claim fails.

### 4. *Violation of Petitioner's Right to Confront and Cross-Examine His Accusers*

Finally, Petitioner claims, and Respondent concedes, that admission of co-defendant Hanley's redacted statements violated Petitioner's Sixth Amendment Confrontation Clause rights under Crawford v. Washington, 541 U.S. 36 (2004). See Traverse at 11; Answer at 19.  Respondent nonetheless argues that admission of the statements constitutes harmless error.  See Answer at 19.  Petitioner responds that Hanley's testimony established a plan to commit a crime prior to the entry into Aubrey's home, and that such testimony struck at the heart of Petitioner's defense that he was merely following others and was too high to understand what he was doing.  Though Petitioner did not directly raise this claim on direct appeal before the state court, he joined in his co-defendant's appeal of this issue.  See Keisner, 2004 WL 206614, at *3, n.3.  He did raise this issue on his habeas appeal to the California Supreme Court.

The Confrontation Clause of the Sixth Amendment provides that in criminal cases the accused has the right to "be confronted with witnesses against him." U.S. Const. amend. VI.  The federal confrontation right applies to the states through the Fourteenth Amendment.  See Pointer v. Texas, 380 U.S. 400, 403 (1965).  The ultimate goal of the Confrontation Clause is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee.  Crawford,

15

541 U.S. at 61.  It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination. Id.; see Davis v. Alaska, 415 U.S. 308, 315-16 (1974) (a primary interest secured by the Confrontation Clause is the right of cross-examination).  The Clause thus reflects a judgment, not only about the desirability of reliable evidence, but about how reliability can best be determined.  Crawford, 541 U.S. at 61.  Because Respondent concedes error on this issue, the Court will proceed with the harmless error analysis and presume that the statements in question are "testimonial" for purposes of Confrontation Clause analysis.  See id. at 52 ("Statements taken by police officers in the course of interrogations are . . . testimonial . . . .").

Confrontation Clause claims are subject to harmless error analysis.  United States v. Nielsen, 371 F.3d 574, 581 (9th Cir. 2004) (post-Crawford case); see also United States v. Allen, 425 F.3d 1231,1235 (9th Cir. 2005).  For purposes of federal habeas corpus review, the standard applicable to violations of the Confrontation Clause is whether the inadmissible evidence had an actual and prejudicial effect upon the jury.  See Hernandez v. Small, 282 F.3d 1132, 1144 (9th Cir. 2002) (citing Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)).  Thus, the Court can only grant Petitioner relief if he can show that the constitutional violation "resulted in 'actual prejudice.'" Brecht, 507 U.S. at 637.

Petitioner has not demonstrated actual prejudice.  As shown above, even without the erroneously admitted testimony of his co-defendant, there was sufficient evidence on the record for the jury to find Petitioner guilty.  First, Petitioner took part in a home invasion while wearing a mask.  This is not a casual activity and it implies forethought on the part of all participants prior to their arrival at Aubrey's house.  The trial record shows that the group first knocked on the front door and when that went un-answered, they entered

16

1  unannounced through the back door, wearing the masks.  Second, two of

2  Petitioner's companions, Steele and Hanley, had prior knowledge of Aubrey's

3  receipt of monies and may have suggested him as a good target for a robbery.

4  Finally, Petitioner drove this entire group (for some portion of the trip) to

5  Aubrey's home and has offered no contrary rationale for the trip or his

6  involvement beyond being too high to know.  While Hanley's full testimony

7  corroborates these other pieces of evidence, Petitioner has not shown actual

8  prejudice occurred as a result of the admission of this evidence.  Thus, the trial

9  court's error in admitting Hanley's testimony was harmless.

10                                  **CONCLUSION**

11         After a careful review of the record and pertinent law, the court is satisfied

12  that the petition for a writ of habeas corpus must be DENIED.

13         Judgment shall be entered in favor of the Respondent and the file closed.

14         **IT IS SO ORDERED.**

15
    Dated: May 7, 2008
16                                 _____
                                   CHARLES R. BREYER
17                                 UNITED STATES DISTRICT JUDGE

18

19

20  G:\CRBALL\2006\3901\Bowman Denial Order2.wpd

21

22

23

24

25

26

27

28                                       17